**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARMANDO SERRANO, | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-02869 |
| REYNALDO GUEVARA, et al., | Hon. Manish S. Shah |
| Defendants. | |
| JOSE MONTANEZ, | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-04560 |
| REYNALDO GUEVARA, et al., | Hon. Manish S. Shah |
| Defendants. | |

**COOK COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

SUMMARY OF ALLEGATIONS ............................................................................... 2

STANDARD OF REVIEW .......................................................................................... 4

ARGUMENT ................................................................................................................ 5

I.     PLAINTIFFS' CLAIMS AGAINST ASAs COGHLAN AND DILLON ARE
       BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY ....................... 5

       A.     Alleged Concealment Of Exculpatory Evidence .................................... 7

       B.     Presentation Of Allegedly False Evidence At Trial................................ 8

       C.     Alleged "Fabrication" Of Evidence Prior To Plaintiffs' Arrests ........... 9

       D.     Alleged Participation In A Conspiracy With The Officer Defendants ............... 11

II.    ALTERNATIVELY, ASAs COGHLAN AND DILLON ARE ENTITLED TO
       QUALIFIED IMMUNITY ON PLAINTIFFS' CLAIMS ............................. 11

       A.     Plaintiffs' So-Called "Fabrication" Claims ........................................ 12

       B.     Plaintiffs' Failure To Intervene Claims .............................................. 14

       C.     Plaintiff Serrano's Federal Malicious Prosecution Claim ................... 16

III.   PLAINTIFFS' USE OF GROUP PLEADING IS IMPROPER ..................... 17

IV.    PLAINTIFFS' CLAIMS AGAINST COOK COUNTY MUST ALSO BE
       DISMISSED ................................................................................................... 18

CONCLUSION............................................................................................................ 19

# TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Creighton*,
483 U.S. 640 (1987)..................................................................................................15

*Anderson v. Simon*,
217 F.3d 472 (7th Cir. 2000) ....................................................................................14

*Andrews v. Burge*,
660 F. Supp. 2d 868 (N.D. Ill. 2009) .......................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................... passim

*Atkins v. Hasan*,
No. 15 CV 203, 2015 WL 3862724 (N.D. Ill. June 22, 2015).................................17

*Bank of Am. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ....................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................... passim

*Bennett v. Schmidt*,
153 F.3d 516 (7th Cir. 1998) ......................................................................................5

*Bianchi v. McQueen*,
818 F.3d 309 (7th Cir. 2016) ......................................................................14, 15, 16

*Biggerstaff v. Moran*,
284 Ill. App. 3d 196 (1st Dist. 1996) .......................................................................18

*Brady v. Maryland*,
73 U.S. 83 (1963)............................................................................................... passim

*Buckley v. Fitzsimmons*,
20 F.3d 789 (7th Cir. 1994) .........................................................................7, 8, 12, 13

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993)...........................................................................................5, 6, 8

*Corcoran v. Chicago Park District*,
   875 F.2d 609 (7th Cir. 1989) ........................................................................4

*Doe v. Village of Arlington Heights*,
   782 F.3d 911 (7th Cir. 2015) ......................................................................16

*Elder v. Athens-Clark Cty.*,
   54 F.3d 694 (11th Cir. 1995) ......................................................................11

*Fields v. Wharrie*,
   740 F.3d 1107 (7th Cir. 2014) ................................................................8, 13

*Fields v. Wharrie*,
   672 F.3d 505 (7th Cir. 2012) ...................................................................7, 8

*French v. Corrigan*,
   432 F.2d 1211 (7th Cir. 1970) ....................................................................11

*Gordon v. Devine*,
   No. 08 C 377, 2008 WL 4594354 (N.D. Ill. October 14, 2008) ..................8, 9, 14

*Hampton v. City of Chicago*,
   349 F. Supp. 2d 1075 (N.D. Ill. 2004) ........................................................9

*Harris v. City of Chicago*,
   No. 14 C 4391, 2015 WL 1331101 (N.D. Ill. Mar. 19, 2015) ...................6

*Horstman v. County of DuPage*,
   284 F. Supp. 2d 1125 (N.D. Ill. 2003) .....................................................18

*Houston v. Cook County*,
   758 F. Supp. 1225 (N.D. Ill. 1990) ..........................................................18

*Imbler v. Pachtman*,
   424 U.S. 409 (1976) ........................................................................... passim

*Johnson v. City of Chicago*,
   No. 15 C 7177, 2016 WL 2937446 (N.D. Ill. May 20, 2016) ..................7

*Lunini v. Grayeb*,
   395 F.3d 761 (7th Cir. 2005) .....................................................................15

*Manuel v. City of Joliet*,
   137 S. Ct. 911 (2017) .................................................................................16

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)..............................................................................................6, 12

*Newsome v. McCabe*,
    256 F.3d 747 (7th Cir. 2001) ........................................................................................17

*Opoka v. INS*,
    94 F.3d 392 (7th Cir. 1996) ..........................................................................................3

*Patrick v. City of Chicago*,
    213 F. Supp. 3d 1033 (N.D. Ill. 2016) ..............................................................14, 15

*Pearson v. Callahan*,
    555 U.S. 223 (2009)....................................................................................................12

*People v. Montanez*,
    2016 IL App (1st) 133726 (2016) ..................................................................................2

*People v. Rhodes*,
    38 Ill. 2d 389 (1967) ....................................................................................................9

*People v. Serrano*,
    2016 IL App (1st) 133493 (2016) ..................................................................................2

*Rivera v. Lake Cty.*,
    974 F. Supp. 2d 1179 (N.D. Ill. 2013) ........................................................................14

*Rodney Harris v. City of Chicago*,
    No. 15 CV 3859, 2015 WL 5445012 (N.D. Ill. Sept. 15, 2015)................................14

*Saucier v. Katz*,
    533 U.S. 194 (2001)....................................................................................................12

*Saunders v. City of Chicago*,
    No. 12-cv-09158, 2013 WL 6009933 (N.D. Ill. 2013) ..............................................14

*Saunders-El v. Rohde*,
    778 F.3d 556 (7th Cir. 2015) ........................................................................................7

*Scott v. O'Grady*,
    975 F. 2d 366 (7th Cir. 1992) ......................................................................................5

*Sherman v. Chiapetta*,
    No. 12 C 0953, 2012 WL 4793502 (N.D. Ill. Oct. 9, 2012)........................................3

*Simpson v. Meijer, Inc.*,
   No. 12 C 6217, 2013 WL 3834641 (N.D. Ill. July 24, 2013) ...................................................9

*Smith v. Power*,
   346 F.3d 740 (7th Cir. 2003) ...................................................................................................6

*Spiegel v. Rabinowitz*,
   924 F. Supp. 883 (N.D. Ill. 1996) ...........................................................................................6

*Swanson v. Citibank*,
   614 F.3d 400 (7th Cir. 2010) .................................................................................................17

*Thayer v. Chiczewski*,
   No. 07 C 1290, 2007 WL 3447931 (N.D. Ill. Nov. 13, 2007).................................................3

*Vickery v. Jones*,
   100 F.3d 1334 (7th Cir. 1996) ...............................................................................................15

*Walker v. White*,
   No. 16 CV 7024, 2017 WL 2653078 (N.D. Ill. June 20, 2017)..............................................11

*Wallace v. Kato*,
   549 U.S. 384 (2007)................................................................................................................17

*White v. City of Chicago*,
   369 Ill. App. 3d 765, 61 N.E.2d 1083 (1st Dist. 2006).......................................................6, 10

*White v. Keely*,
   814 F.3d 883 (7th Cir. 2016) ...................................................................................................3

*Whitlock v. Brueggemann*,
   682 F.3d 567 (7th Cir. 2012) .............................................................................................13, 15

*Wrice v. Burge*,
   187 F. Supp. 3d 939 (N.D. Ill. 2015) .................................................................................7, 8, 9

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 ......................................................................................1, 3, 17

Federal Rule of Civil Procedure 12(b)(6) .............................................................................. passim

## INTRODUCTION

Plaintiffs Armando Serrano and Jose Montanez have filed nearly identical complaints against former Chicago Police Detectives Reynaldo Guevara, Ernest Halvorsen and Edward Mingey, former Cook County Assistant State's Attorneys ("ASAs") Matthew Coghlan and John Dillon, the City of Chicago, and Cook County, attempting to assert claims for alleged "fabrication of evidence," alleged violations of *Brady v. Maryland*, malicious prosecution, failure to intervene, intentional infliction of emotional distress, and civil conspiracy to violate federal and/or state law. The vast majority of plaintiffs' allegations, however, have nothing to do with Matthew Coghlan, John Dillon, or Cook County (collectively, the "Cook County Defendants"). And, many of the allegations that actually do reference the Cook County Defendants are cloaked in characterizations and are otherwise conclusory, in violation of Rule 8 of the Federal Rules of Civil Procedure.

Stripped of their improper rhetoric and conclusions, neither complaint states any claim upon which relief can be granted against the Cook County Defendants. *First,* all of the claims against former Cook County Assistant State's Attorneys Coghlan and Dillon are barred by absolute prosecutorial immunity or qualified immunity, regardless of the various legal theories under which they are couched. *Second*, even if ASAs Coghlan and Dillon are not entitled to absolute immunity or qualified immunity for some or all of the alleged conduct described in the complaints, certain of plaintiffs' claims are simply not actionable as a matter of law. *Third*, in many instances, plaintiffs improperly refer to "Defendants" collectively without articulating the specific individual or individuals who allegedly engaged in the conduct at issue. Those allegations violate Rule 8's pleading requirements and warrant dismissal of plaintiffs' Complaints.

For these reasons, as explained in more detail below, all of plaintiffs' claims against ASA Coghlan, ASA Dillon, and Cook County, which is a party to this litigation only for indemnification purposes, must be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS

Plaintiffs attempt to place various labels on their claims against the Cook County Defendants, but the alleged "factual" bases for each are the same: plaintiffs allege that, in June 1993, former ASAs Coghlan and Dillon arranged to have a witness (Francisco Vicente) transported from the Cook County jail to the Cook County State's Attorney's Office to meet with him about his upcoming trial testimony in an unrelated case. (Serrano Compl. ¶¶ 39-40; Montanez Compl. ¶ 37.) Upon Vicente's arrival at the Cook County State's Attorney's Office, ASAs Coghlan and Dillon allegedly met and conspired with officers of the Chicago Police Department (the "Officer Defendants") to pressure Vicente to implicate plaintiffs in the February 1993 murder of Rodrigo Vargas. (Serrano Compl. ¶¶ 20, 26, 38-44; Montanez Compl. ¶¶ 21-22, 26, 32-33, 37, 39-40, 53.)[1] The alleged plan to implicate plaintiffs in the Vargas murder came from the Detectives Guevara and Halvorsen (Serrano Compl. ¶¶ 41, 43; Montanez Compl. ¶ 38); with respect to ASAs Coghlan and Dillon, plaintiffs specifically allege only that ASAs Coghlan and Dillion promised to protect Vicente by moving him to witness protection and to recommend leniency on the charges for which he was incarcerated. (Serrano Compl. ¶¶ 42-43; Montanez Compl. ¶ 39.) Vicente allegedly agreed to make a statement "in exchange for the State's Attorney's promises and assistance," (Serrano Compl. ¶ 44; Montanez Compl. ¶ 53), but did not sign any such statement until nearly a month later, on June 28, 1993. (Serrano Compl. ¶ 57; Montanez Compl. ¶ 56.)

---

[1] The Cook County Defendants accept plaintiffs' non-conclusory factual allegations as true solely for purposes of their motion. We note, however, ASA Coghlan and ASA Dillon were never present for any meeting with Officer Defendants and Vicente in June 1993 in which the Vargas murder was discussed. As noted below, *see* p. 4, *infra*, ASA Coghlan was the prosecutor at plaintiffs' criminal trial, but he had nothing to do with the cases until after plaintiffs were indicted. ASA Dillon was not involved in plaintiffs' criminal cases (or any of the investigation leading up to it) at all. In fact, the 2016 Illinois Appellate Court opinions that plaintiffs incorporate by reference (*see* Serrano Compl. ¶¶ 6, 69; Montanez Compl. ¶¶ 8, 108) do not mention ASA Coghlan or ASA Dillon at all. Rather, those opinions note that only *the Officer Defendants* allegedly pressured Vicente to implicate plaintiffs at the meeting in June 1993. *See People v. Serrano*, 2016 IL App (1st) 133493, at ¶ 11 (2016) (summarizing Vicente's recantation affidavit); *People v. Montanez*, 2016 IL App (1st) 133726, at ¶ 11 (2016) (same).

In the meantime, a different witness—Timothy Rankins—came forward on June 10, 1993, and separately implicated plaintiffs in the Vargas murder. (Serrano Compl. ¶¶ 50-56; Montanez ¶¶ 63-68.) Rankins signed a sworn statement the next day, (Serrano Compl. ¶¶ 50, 54; Montanez Compl. ¶¶ 63, 65), and plaintiffs were arrested and indicted shortly thereafter. (Serrano Compl. ¶¶ 48, 55; Ex. A (showing Montanez's arrest on July 8, 1993).)[2] Plaintiffs do not specifically allege that either ASA Coghlan or ASA Dillon were involved in obtaining Rankins's statement or that they had any knowledge of the circumstances under which he gave it.[3]

Plaintiffs allege that, after the grand jury indicted plaintiffs, ASAs Coghlan and Dillon gave Vicente a number of benefits in exchange for his anticipated trial testimony, including, among other things, cigarettes, special food, and conjugal visits. (Serrano Compl. ¶ 61; Montanez Compl. ¶ 61.) Plaintiffs also allege that ASAs Coghlan and Dillon also promised to recommend leniency at sentencing in Vicente's own criminal cases. (Serrano Compl. ¶ 67, Montanez Compl. ¶ 79.) These alleged benefits, plaintiffs allege, were concealed from them before, during and after plaintiffs' criminal trial. (Serrano Compl. ¶ 67; Montanez Compl. ¶ 79.) Plaintiffs further allege that, after Vicente testified before the grand jury, ASAs Coghlan and Dillon "prepped and

---

[2] Serrano was initially brought in for questioning on June 8, 1993. (Serrano Compl. ¶ 47.) He was released, however, the very next day and was not rearrested until after Rankins implicated plaintiffs. (*Id.* at ¶¶ 48, 55.) Ex. A (Montanez's arrest report) is a public record of which the Court can take judicial notice. *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016) (court may take judicial notice of matters of public record on a Rule 12(b)(6) motion to dismiss); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (proceedings from other courts, "both within and outside of the federal judicial system" may be judicially noticed where they "have a direct relation to matters at issue"); *Sherman v. Chiapetta*, No. 12 C 0953, 2012 WL 4793502, *2 (N.D. Ill. Oct. 9, 2012) (Pallmeyer, J.) (taking judicial notice of arrest warrant and transcript from hearing in underlying criminal case in ruling on motion to dismiss); *Thayer v. Chiczewski*, No. 07 C 1290, 2007 WL 3447931, *1 (N.D. Ill. Nov. 13, 2007) (Darrah, J.) (taking judicial notice of records relating to plaintiffs' arrest and conviction in ruling on motion to dismiss).

[3] In many instances throughout their complaints, including in Montanez's allegations relating to the alleged events leading up to the Rankins statement, plaintiffs engage in improper group pleading, alleging vaguely that the "Defendants," collectively, engaged in certain conduct, without providing specific facts as to what each individual defendant purportedly did. (*See, e.g.*, Montanez Compl. ¶¶ 41-47, 49, 63-69, 114-116, 118, 135, 139, 141, 143, 153-154, 156; Serrano Compl. ¶¶ 3, 131) For the reasons discussed in Section III, *infra*, those allegations violate Rule 8's pleading requirements and must be dismissed.

coached" Vicente in preparation for his trial testimony and then knowingly presented his false testimony at plaintiffs' criminal trial. (Serrano Compl. ¶ 61, 64; Montanez Compl ¶ 62, 74; *see also* Ex. B (portion of the transcript from plaintiffs' criminal trial of which the Court may take judicial notice, *see* n.2, *supra*, showing that ASA Coghlan was the prosecutor who tried the cases).)

Based on these allegations, plaintiffs attempt to assert the following claims against ASAs Coghlan and Dillon: § 1983 claims for fabrication of evidence (Count I of both Complaints), civil conspiracy (Count IV of both Complaints), and failure to intervene (Counts V of both Complaints) and state law claims for malicious prosecution (Count VII of Serrano Complaint, Count VIII of Montanez Complaint), civil conspiracy (Count VIII of Serrano Complaint; Count X of Montanez Complaint),[4] and intentional infliction of emotional distress (Count IX of the Serrano Complaint; Count VII of the Montanez complaint). Serrano—but not Montanez—also attempts to assert claims against ASAs Coghlan and Dillion for alleged violations of *Brady v. Maryland*, 73 U.S. 83 (1963) (Count II) and for malicious prosecution under the Fourth Amendment (Count VII). Both plaintiffs assert claims against Cook County for *Respondeat Superior* (Count X of both Complaints) and indemnification (Count XI of both Complaints).

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and

---

[4] The state-law civil conspiracy claim in the Montanez complaint is labeled as Count VI, but should be Count X.

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court in *Iqbal* set forth a two-prong inquiry for reviewing 12(b)(6) dismissals. First, pleadings consisting of conclusory allegations are not accepted as true when reviewing the complaint's sufficiency. This includes conclusory statements "couched" as factual allegations, and recitations of the elements. Second, after excising the conclusory allegations from the complaint, any well-pled factual allegations are accepted as true and the Court must determine whether the remaining well-pled facts "plausibly give rise to an entitlement to relief." *Id.* at 679. In addition, "[l]itigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail," *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998), and a court is not required to ignore facts set forth in the complaint that undermine the plaintiff's claims, *Scott v. O'Grady*, 975 F. 2d 366, 368 (7th Cir. 1992).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST ASAs COGHLAN AND DILLON ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY.

Plaintiffs' claims against ASAs Coghlan and Dillon should be dismissed with prejudice because they arise solely out of actions one or both of them allegedly took as a part of the initiation and presentation of the case against Serrano and Montanez. It is well settled that prosecutors are absolutely immune from suits for damages for any actions they take that are "intimately associated with the judicial phase of the criminal process," including among other things, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State . . . ." *Buckley v. Fitzsimmons* ("*Buckley I*"), 509 U.S. 259, 273 (1993); *see also Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976) (explaining

that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom" that require "decisions on a wide variety of sensitive issues," including "questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute . . ."); *Spiegel v. Rabinowitz*, 924 F. Supp. 883, 888 (N.D. Ill. 1996) (citing *Imbler* and explaining that "decisions (which evidence to present at trial, which witnesses to call, and whether a case should even be brought in the first place), although technically occurring *before* the actual trial, should be protected by absolute prosecutorial immunity") (emphasis in original).

Prosecutors are shielded by absolute immunity even where they act "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003); *see also Imbler*, 424 U.S. 995-96 n.34 (holding that absolute prosecutorial immunity even extends to a prosecutor who willfully uses perjured testimony and suppresses exculpatory information). Thus, when considering whether a prosecutor is immune from suit, a court should focus on the conduct for which immunity is claimed rather than "the harm that the conduct may have caused or the question whether it was lawful." *Buckley I*, 509 U.S. at 271. Where applicable, absolute immunity provides "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

Prosecutors are entitled to absolute immunity under Illinois law as well. In evaluating whether a prosecutor is entitled to absolute immunity under Illinois law, Illinois courts have mirrored the United States Supreme Court's pronouncement in *Imbler*. *See, e.g., White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006). Moreover, courts in this District have consistently applied the analysis in *Imbler* to state law claims of malicious prosecution and conspiracy. *See, e.g., Harris v. City of Chicago*, No. 14 C 4391, 2015 WL 1331101, *7 (N.D. Ill. Mar. 19, 2015)

(dismissing both federal and state law claims on absolute immunity grounds); *Wrice v. Burge*, 187 F. Supp. 3d 939, 948 (N.D. Ill. 2015) (same).

As established below, all of plaintiffs' claims against ASAs Coghlan and Dillon fail because they all arise solely out of actions they allegedly took while acting as prosecutors for the Cook County State's Attorney's Office.

### A.   Alleged Concealment Of Exculpatory Evidence

To the extent plaintiffs allege that ASAs Coghlan and Dillon suppressed exculpatory evidence, the Supreme Court and Seventh Circuit have made clear that such claims are barred by absolute immunity. *See, e.g., Imbler*, 424 U.S. 995-96 n.34 (holding that absolute prosecutorial immunity extends to a prosecutor who willfully suppresses exculpatory information). Indeed, as the Seventh Circuit emphasized in *Fields v. Wharrie* (*"Fields I"*), 672 F.3d 505, 514 (7th Cir. 2012), "*Brady* and *Giglio* violations breach a defendant's *trial rights* and are, thus, inherently prosecutorial." (emphasis added).[5] Accordingly, courts routinely dismiss *Brady* claims asserted against prosecutors on absolute immunity grounds. *See, e.g., Johnson v. City of Chicago*, No. 15 C 7177, 2016 WL 2937446, *4 (N.D. Ill. May 20, 2016) (dismissing *Brady* claim against prosecutors based on alleged failure to disclose evidence indicating that material witness may have been coerced and promised leniency because "such alleged conduct involved discovery obligations and related to the inherent prosecutorial function of [the] ASA Defendants."); *Gordon v. Devine*,

---

[5] Insofar as plaintiffs attempt to assert claims based on the alleged benefits ASAs Coghlan and Dillon gave to Vicente in exchange for his testimony, the provision of any such benefits violates the constitution only if they are not disclosed at trial. As discussed above, however, any such concealment falls "comfortably within the scope of prosecutorial immunity." *Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994) (explaining that paying a witness for testimony does not violate the Constitution, while concealing the payments at trial would violate a defendant's rights; court explained, however, that any such concealment falls within the scope of prosecutorial immunity). Any *Brady* claim based on the alleged failure to disclose a defendant's own misconduct likewise fails as a matter of law. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) ("keeping quiet about [defendants' own] wrongdoing" is not a violation of *Brady*).

No. 08 C 377, 2008 WL 4594354, *12 (N.D. Ill. October 14, 2008) (holding that defendant prosecutor's alleged suppression of exculpatory evidence "fit[s] soundly within the protection of absolute immunity afforded to prosecutors"). Thus, any claims based on alleged *Brady* violations must be dismissed.

### B.      Presentation Of Allegedly False Evidence At Trial

Plaintiffs' claims that ASAs Coghlan and Dillon knowingly presented false testimony at plaintiffs' criminal trial fail for the same reason. In *Imbler*, the Supreme Court declined to find a distinction between the knowing use of perjured testimony and the deliberate withholding of exculpatory evidence, explaining that "[a] claim of using perjured testimony simply may be reframed and asserted as a claim of suppression of the evidence upon which the knowledge of perjury rested." *Imbler*, 424 U.S. at 431 n.34; *see also Buckley I*, 509 U.S. at 270 (recognizing that prosecutors are absolutely immune from suit under § 1983 "for eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings").

Following *Imbler*, the Seventh Circuit and courts in this District have similarly held that a prosecutor's use of knowingly false testimony at trial is covered by absolute immunity. *See, e.g., Fields I*, 672 F.3d at 517 (holding that prosecutor defendant was entitled to absolute immunity for his alleged solicitation of false testimony from a witness and allegedly concealing the falsity of that testimony); *Buckley v. Fitzsimmons* ("*Buckley II*"), 20 F.3d 789, 795 (7th Cir. 1994) ("Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs."); *Wrice*, 187 F. Supp. 3d at 947 ("Presenting evidence at trial is a core prosecutorial function, protected by absolute prosecutorial immunity and therefore an insuperable bar to an award of damages in a suit for malicious prosecution against the prosecutor.") (quoting *Fields v. Wharrie* ("*Fields II*"), 740 F.3d 1107, 1111

(7th Cir. 2014)); *Simpson v. Meijer, Inc.*, No. 12 C 6217, 2013 WL 3834641, *6 (N.D. Ill. July 24, 2013) (prosecutors' conduct in encouraging witnesses to testify falsely was entitled to absolute immunity because "prosecutorial immunity protects even a prosecutor's knowing use of false testimony at trial"); *Gordon*, 2008 WL 4594354 at *13 (prosecutor was entitled to absolute immunity for, among other things, his alleged presentation of false testimony during trial).

### C. Alleged "Fabrication" Of Evidence Prior To Plaintiffs' Arrests

Coghlan and Dillon are also entitled to absolute immunity for their alleged presence at a meeting in which the Officer Defendants allegedly pressured a witness—Francisco Vicente—to implicate plaintiffs in the Vargas murder. "The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged." *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967). As noted above, those responsibilities include interviewing witnesses and evaluating whether charges should be filed in the first place. *Imbler*, 424 U.S. at 431 n.33 (actions taken "preliminary to the initiation of a prosecution" including the collection, review, and evaluation of evidence, are covered by absolute immunity); *see also Wrice*, 187 F. Supp. 3d at 947 (holding that plaintiff's allegations that the prosecutor violated plaintiff's constitutional rights when she allegedly threatened witnesses, failed to disclose to the defense that she had coerced the witness into testifying, lied about how certain witnesses were located, and manufactured testimony implicating plaintiff in the crime were barred by absolute immunity); *Gordon*, 2008 WL 4594354 at *11-14 (dismissing on absolute immunity grounds claims that prosecutor defendants violated plaintiff's rights when they allegedly decided to prosecute him, knowing that his indictment was false, presented fabricated testimony and police reports to the grand jury and the trial court; misrepresented who the state planned to call as witnesses; and failed to tender evidence in violation of *Brady v. Maryland*.); *Hampton v. City of Chicago*, 349 F. Supp. 2d 1075, 1081-82 (N.D. Ill.

2004) (interviewing witnesses, deciding what information was necessary for trial, interviewing arrestee, reading arrestee his *Miranda* rights, and approving charges against arrestee are all part of initiating a judicial proceeding and entitled to absolute immunity).

In *White v. City of Chicago*, for example, the plaintiffs alleged that the State's Attorney's Office: (1) reinvestigated the murder for which the plaintiffs were charged and determined they had no connection to the crime; (2) determined that another person had committed the murders; (3) determined that the main prosecution witness was untruthful; and (4) determined that the physical evidence did not support the charges. 369 Ill. App. 3d 765, 768 (1st Dist. 2006). The plaintiffs further alleged that the State's Attorney's Office conducted a second investigation that supported the findings of the original investigation. *Id.* Moreover, the plaintiffs alleged that, despite actual knowledge of these facts, the State's Attorney's Office suppressed the information and essentially bribed a prosecution witness to testify falsely before the grand jury. *Id.*

While recognizing the severity of the allegations against the State's Attorney's Office defendants, the *White* court held that they were protected from suit on absolute immunity grounds because the assistant state's attorneys' actions in interviewing witnesses fell within the purview of "the obtaining, reviewing, and evaluating of evidence" that is required to prepare for the initiation of the criminal process and a trial. *Id.* at 772 (quoting *Imbler*, 424 U.S. at 431 n.33).

Here, as in *White*, plaintiffs allege that ASAs Coghlan and Dillon worked with police to pressure a witness (Vicente) to implicate plaintiffs in the Vargas murder. While plaintiffs also assert in conclusory fashion that ASAs Coghlan and Dillon were engaged in "investigatory" conduct (conclusions that should be disregarded under *Twombly* and *Iqbal*), the actual *factual* allegations are that ASAs Coghlan and Dillon participated in interviewing a witness and promised him leniency in the course his testimony.

What is more, no evidence was actually procured at this alleged meeting that resulted in an arrest or a charge for murder.[6] Vicente did not sign any statement implicating plaintiffs until June 28, 1993. By that time, another witness (Rankins) had already signed a separate sworn statement—which ASAs Coghlan and Dillon had no alleged role in obtaining—that provided independent probable cause for Serrano's and Montanez's arrests on June 11, 1993 and July 8, 1993, respectively. Any actions allegedly taken after Rankins signed his statement would have been in the course of preparing for the initiation of judicial proceedings or for trial. Thus, ASAs Coghlan and Dillon are entitled to absolute immunity.

### D. Alleged Participation In A Conspiracy With The Officer Defendants

Plaintiffs' allegation that ASAs Coghlan and Dillon were part of a broader conspiracy against them does not defeat absolute immunity. *See French v. Corrigan*, 432 F.2d 1211, 1214-15 (7th Cir. 1970) (holding that prosecutors did not lose their immunity by reason of alleged conspiracy). In *Imbler*, the plaintiff alleged a conspiracy between the prosecutor and police that caused him to be wrongfully charged and convicted through the knowing use of false testimony and the suppression of exculpatory evidence. 424 U.S. at 416. In affirming dismissal of the plaintiff's complaint pursuant to Rule 12(b)(6), the Court ruled that, despite the nature of the plaintiff's "conspiracy" allegations, the prosecutor was absolutely immune because his activities were intimately associated with the judicial phase of the criminal process. *Id*. at 431.

The result here should be no different. Any claim that ASAs Coghlan and Dillon are liable as a part of a broader conspiracy does not defeat immunity, *see, e.g., Elder v. Athens-Clark Cty*.,

---

[6] As noted above, Serrano was brought in for questioning on June 8, 1993, but he was released the very next day. (Serrano Comp. ¶¶ 47-48.)

-11-

54 F.3d 694, 695 (11th Cir. 1995), and thus, plaintiffs' conspiracy claims must likewise be dismissed.[7]

## II.   ALTERNATIVELY, ASAs COGHLAN AND DILLON ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' CLAIMS.

Even if the Court concludes that Coghlan and Dillon are not entitled to absolute immunity for some or all of their alleged conduct at this juncture, it should dismiss plaintiffs' claims on grounds of qualified immunity. The qualified immunity doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). In assessing whether a state actor is entitled to qualified immunity, courts undertake a two-part inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, courts consider whether the facts alleged set forth a violation of a constitutional right. *Id.* at 201. Second, courts consider whether the right was clearly established at the time of the alleged misconduct. *Id.* Courts have discretion to decide which of these two prongs "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. As with absolute immunity, qualified immunity entitles defendant to immunity from suit rather than just a defense from liability. *Mitchell*, 472 U.S. at 526.

### A.   Plaintiffs' So-Called "Fabrication" Claims

Even if plaintiffs have alleged sufficient "facts" supporting their conclusory allegation that ASAs Coghlan and Dillon were acting "in an investigatory capacity" at the time they and the Officer Defendants allegedly met with Vicente in June 1993 (and they have not), ASAs Coghlan and Dillon are nevertheless entitled to qualified immunity because their alleged involvement in

---

[7] In addition, every defendant in this case is alleged to be a state actor, and thus, as this Court noted in *Walker v. White*, No. 16 CV 7024, 2017 WL 2653078, *7 (N.D. Ill. June 20, 2017), plaintiffs' standalone conspiracy claims are superfluous.

that meeting suggests, at best, only a claim of witness coercion for which plaintiffs have no cognizable claim. *Buckley II*, 20 F.3d at 794-96 (prosecutor entitled to qualified immunity where he solicited, coerced and paid for false testimony prior to plaintiff's arrest). In *Buckley II*, the plaintiff alleged that prosecutors coerced two witnesses to falsely implicate him during a murder investigation. *Id*. The plaintiff also alleged that the prosecutors fabricated and manufactured evidence and testimony from an expert witness. *Id*. at 795-96. The Seventh Circuit held that the solicitation of false evidence from a witness does not violate *the plaintiff's* clearly established constitutional rights. *Id*. at 794-95.

Here, plaintiffs allege in only conclusory fashion that ASAs Coghlan and Dillon "fabricated" evidence against them—an allegation that gets plaintiffs nowhere. *Iqbal*, 556 U.S. at 678 (holding that a complaint cannot survive through "naked assertion[s] devoid of further factual enhancement"). And, the specific factual allegations as to what *ASAs Coghlan and Dillon* allegedly did at that meeting do not support a fabrication claim either. To the contrary, plaintiffs allege only that ASAs Coghlan and Dillon promised to protect Vicente and give him special privileges in exchange for his testimony. (Serrano Compl. ¶¶ 42-44; Montanez Compl. ¶ 39.) Although "[t]he exchange of [benefits] for information may be a regrettable way of securing evidence," and "[c]oercing witnesses to speak, rather than loosening their tongues by promises of reward, is a genuine constitutional wrong," a prosecutor's involvement in such conduct does not violate the constitutional rights of the *defendant* against whom an indictment is later brought or evidence is later admitted. *Buckley II*, 20 F.3d at 794-95.

Insofar as Plaintiffs allege that any evidence *fabrication* occurred in connection with the June 2, 1993 meeting, *see Whitlock v. Brueggemann,* 682 F.3d 567, 581-82 (7th Cir. 2012); *Fields II*, 740 F.3d at 1110, it is the *Officer Defendants* who are at the center of those factual allegations,

not ASAs Coghlan and Dillon. In particular, plaintiffs allege that it was *Guevara* who "fed [Vicente] a narrative that involved naming [Serrano], Montanez and Pacheco as the offenders" in Vargas's murder. (Serrano Compl. ¶ 41; Montanez Comp. ¶ 38.) When Vicente purportedly refused to testify to being an eyewitness, it was *Halvorsen* who allegedly proposed that Vicente take a different route and state that Montanez confessed to the plaintiffs' involvement in the crime. (Serrano Compl. ¶ 43.)

As in *Buckley II*, then, ASAs Coghlan and Dillon are entitled to qualified immunity for the specific actions that *they* allegedly took with respect to the alleged June 1993 meeting.

### B.      Plaintiffs' Failure To Intervene Claims

ASAs Coghlan and Dillon are also entitled to qualified immunity on plaintiffs' failure to intervene claims (Count V of each Complaint) because there is no clearly established duty on prosecutors to intervene in the circumstances alleged in the complaints, let alone any clearly established duty to do so in 1993. To date, the Seventh Circuit has not explicitly recognized a failure to intervene claim against a prosecutor, and courts in this District are split on the issue. *Compare, e.g., Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1055 (N.D. Ill. 2016) (declining to expand the law to recognize a failure to intervene claim to prosecutors) and *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n.6 (N.D. Ill. 2009) (same) and *Gordon*, 2008 WL 4594354 at *17 (same) *with Rodney Harris v. City of Chicago*, No. 15 CV 3859, 2015 WL 5445012, *3-4 (N.D. Ill. Sept. 15, 2015) (denying motion to dismiss plaintiff's failure to intervene claim against prosecutors) and *Saunders v. City of Chicago*, No. 12 CV 09158, 2013 WL 6009933, *10 (N.D. Ill. 2013) (same) and *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) (same). For this reason alone, these claims should be dismissed. *Cf. Bianchi v. McQueen,* 818 F.3d 309, 323 (7th Cir. 2016) (qualified immunity applied where law unsettled as to whether claim was cognizable).

-14-

As the *Patrick* court explained in 2016, there are "good reasons to be cautious in expanding the law in this area to include [prosecutors]." *Patrick*, 213 F. Supp. 3d at 1055. *First*, in Illinois, prosecutors do not have police powers and cannot legally or practically "direct or limit law enforcement officers in their investigations." *Id*. Indeed, as the Seventh Circuit explained, "the police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command authority over the Chicago Police Department." *Anderson v. Simon,* 217 F.3d 472, 476 (7th Cir. 2000).[8] Besides the obvious imprudence of requiring a prosecutor to physically intervene in police activity of any sort, no duty or persuasive authority exists that would allow, much less require, a prosecutor to physically, or otherwise affirmatively intervene in any police activity or perceived misconduct. The only real authority that a prosecutor might have in such a situation would be to refuse to indict or prosecute a case—a decision for which a prosecutor is absolutely immune. *Patrick*, 213 F. Supp. 3d at 1055.

Moreover, even if such a duty does exist, it was not clearly established in 1993 when the alleged violation occurred in this case. A right is clearly established when, at the time of the challenged conduct, the contours of a right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 640, 639-40 (1987); *see also Bianchi*, 818 F.3d at 323 (noting same and upholding dismissal of malicious prosecution claim brought as a Fourth Amendment claim on qualified immunity grounds because of circuit split on whether such a claim is cognizable). To show that the right in question was

---

[8] The cases denying motions to dismiss failure to intervene claims rely primarily on the Seventh Circuit's ruling in *Whitlock*, 682 F.3d at 580-81. *Whitlock*, however, did not specifically address the issue of whether a prosecutor—who has no power or control over a police officer—has a duty to intervene to prevent an officer's misconduct. Furthermore, the *Whitlock* decision was not issued until 2012, nearly twenty years after the alleged events giving rise to plaintiffs' claims occurred. Thus, even if *Whitlock* can be read to establish a duty to intervene on the part of a prosecutor, such a duty was not "clearly established" in 1993.

clearly established at the time the alleged violation occurred, a plaintiff must point to closely analogous cases which establish that the conduct was unlawful or demonstrate that the violation was so obvious that a reasonable state actor should know that what he is doing—or in this case not doing—violates the constitution. *Vickery v. Jones*, 100 F.3d 1334, 1339-40 (7th Cir. 1996); *see also Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005) ("[T]he plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right."). "Although the plaintiff need not point to a case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015) (quoting *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (emphasis added)).

As noted above, the law in this Circuit is *still* unsettled as to whether a prosecutor has a duty to intervene in the first place. Thus, plaintiffs cannot under any circumstances establish that it was "beyond debate" that Coghlan and Dillon had a duty to intervene when the alleged violation occurred in 1993.

### C.  Plaintiff Serrano's Federal Malicious Prosecution Claim

ASAs Coghlan and Dillon are entitled to qualified immunity on Serrano's federal (Fourth Amendment) malicious prosecution claim (Count III of his Complaint) for the same reasons.[9] *First*, as with the failure to intervene claims, it is still unclear whether a federal malicious prosecution claim is cognizable at all. The Supreme Court recently remanded a case to the Seventh Circuit to consider this very issue. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 921-22 (2017). Unless or until the Seventh Circuit determines that such a cause of action exists under federal law

---

[9] As noted above, Montanez has also attempted to assert a claim for federal malicious prosecution (*see* Count III), but that claim appears to be directed at the Officer Defendants only.

and specifies the contours of such a cause of action, Serrano should not be permitted to proceed on such a claim. *See Bianchi*, 818 F.3d at 323 (holding that qualified immunity applied to Fourth Amendment malicious prosecution claim where law unsettled as to "whether a malicious-prosecution claim is *ever* cognizable as a Fourth Amendment violation remediable under § 1983").

*Second*, even if the Seventh Circuit were to decide on remand that there is a federal cause of action for malicious prosecution, there certainly was no such clearly established right in 1993. To the contrary, for years, the Seventh Circuit refused to recognize such a claim, *see, e.g., Newsome v. McCabe,* 256 F.3d 747, 750–52 (7th Cir. 2001), and the Supreme Court specifically declined to address the issue, *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007). Thus, it certainly was not "beyond debate" that such a claim was cognizable in 1993.

## III.  PLAINTIFFS' USE OF GROUP PLEADING IS IMPROPER.

To the extent plaintiffs seek to allege that the Cook County Defendants were involved in any other alleged misconduct, those allegations should be dismissed for failure to satisfy Rule 8's pleading requirements. To state a claim under § 1983 or Illinois state law, a plaintiff must allege facts sufficient to demonstrate that a particular defendant was personally involved in the deprivation of the plaintiff's rights. *Bank of Am. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (holding that a plaintiff must give notice such that "[e]ach defendant . . . know[s] what he or she did that is asserted to be wrongful," even for conspiracy allegations); *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010) (stating that to survive a Rule 12(b)(6) motion, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together"). Allegations that "defendants" committed some act, "without any details about who did what ... is inadequate" under *Iqbal* and *Twombly*, and "does not propound a plausible contention that a particular person did anything wrong." *Knight*, 725 F.3d at 818.  Accordingly, any "complaint based on a theory of collective responsibility must be dismissed." *Id*; *see also Atkins v. Hasan*, No.

15 CV 203, 2015 WL 3862724, *3 (N.D. Ill. June 22, 2015) ("This [collective] kind of pleading is indeed inadequate, because it provides no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct—in which case the collective descriptor may be permissible—or whether plaintiffs instead contend that only some of the defendants . . . performed a given act.").

Here, the paragraphs alleging that the "Defendants," collectively, engaged in certain conduct, (*see, e.g.*, Montanez Compl. ¶¶ 41-47, 49, 63-69, 114-116, 118, 135, 139, 141, 143, 153-154, 156, 158-159; Serrano Compl. ¶¶ 3, 131), fail to give adequate notice as to how each defendant was personally involved in the conduct described. Accordingly, those allegations should be dismissed.

## IV. PLAINTIFFS' CLAIMS AGAINST COOK COUNTY MUST ALSO BE DISMISSED.

Plaintiffs both advance two theories for which they assert Cook County itself is liable for the alleged actions of ASAs Coghlan and Dillon: (1) *respondeat superior*; and (2) indemnification. As for the *respondeat superior* claims, Cook County is not the employer of ASAs Coghlan and Dillon. State's attorneys are independently elected State, not County, officials. *See, e.g., Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1130-31 (N.D. Ill. 2003). Thus, the County cannot be held liable under a *respondeat superior* theory for the alleged actions of ASAs Coghlan and Dillon. *Biggerstaff v. Moran*, 284 Ill. App. 3d 196 (1st Dist. 1996) (holding that the County was not the employer of the State's Attorney's Office and not liable for the alleged conduct of Assistant State's Attorneys under a *respondeat superior* theory, because the State's Attorney is a state officer whose office was created under the judiciary article of the Illinois constitution); *see also Houston v. Cook County,* 758 F. Supp. 1225, 1226-27 (N.D. Ill. 1990) (holding that the County is insulated "against

any Section 1983 liability for actions taken by Assistant State's Attorneys -- staffers who act solely under the supervision and control of the Cook County State's Attorney.").

Notwithstanding, while Cook County is not the employer of ASAs Coghlan and Dillon, Cook County acknowledges that it may be a necessary party to this litigation for indemnification purposes. But, because all of the claims against ASAs Coghlan and Dillon fail, for the reasons set forth above, plaintiffs' claims against Cook County should be dismissed as well.

## **CONCLUSION**

For the foregoing reasons, the Cook County Defendants respectfully request that this Court dismiss with prejudice each of plaintiffs' claims.


Dated: October 20, 2017                          Respectfully submitted,


/s/ James E. Hanlon, Jr.                         /s/ Paula S. Quist
Chaka M. Patterson                               Paula S. Quist (IL 6278287)
James E. Hanlon, Jr.                             (pquist@jonesday.com)
Anthony E. Zecchin                               Leigh A. Krahenbuhl (IL 6309479)
Scott A. Golden                                  (lkrahenbuhl@jonesday.com)
Cook County State's Attorney's Office            JONES DAY
500 Richard J. Daley Center                      77 West Wacker
Chicago, IL 60602                                Chicago, IL 60601.1692
Telephone: (312) 603-5440                        Telephone: (312) 782-3939

*Counsel for Defendants John Dillon and*         *Counsel for Defendant Matthew*
*Cook County*                                    *Coghlan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of October, 2017, I filed the foregoing with the Clerk of the United States District Court using the CM/ECF system, which will send notification electronically to all counsel of record.

/s/ Paula S. Quist
*Counsel for Defendant Matthew Coghlan*