## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARMANDO SERRANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 17 CV 2869 |
| REYNALDO GUEVARA, | ) | |
| ERNEST HALVORSEN, EDWARD | ) | Honorable Manish S. Shah |
| MINGEY, ROBERT BIEBEL | ) | |
| MATTHEW COGHLAN, | ) | Magistrate Jeffrey Cole |
| JOHN DILLON, and the CITY OF | ) | |
| CHICAGO, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JOSE MONTANEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 17 CV 4560 |
| CHICAGO POLICE OFFICERS | ) | |
| REYNALDO GUEVARA, ERNEST | ) | Honorable Manish S. Shah |
| HALVORSEN, EDWARD MINGEY, AND | ) | |
| UNKNOWN OFFICERS; MATTHEW | ) | Magistrate Jeffrey Cole |
| COGHLAN, JOHN DILLON; the CITY OF | ) | |
| CHICAGO; and COOK COUNTY. | ) | JURY DEMANDED |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' COMBINED RESPONSE TO
## CITY DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................7

    I.    Plaintiffs' Fabrication of Evidence Claims Regarding Timothy Rankins' False and Coerced Statement Are Sufficient ...............................................................................7

    II.    Plaintiffs' Brady Claim Against Defendant Mingey Should Not Be Dismissed ..........10

         A.  Plaintiffs' Complaints States a Brady Claim Against Defendant Mingey, Distinct from the Fabrication of Evidence Claims ...............................................................11

         B.  Plaintiffs Have Sufficiently Alleged Suppression and Materiality .........................14

    III.    Plaintiffs Sufficiently Plead Their Malicious Prosecution Claim .................................15

         A.  Federal Malicious Prosecution Claims Are Viable .................................................16

         B.  Plaintiffs' Malicious Prosecution Claims are Timely ............................................17

    IV.    The Conspiracy and Failure to Intervene Claims Against Mingey Are Sufficient ........20

    V.    Plaintiff's State Law Malicious Prosecution Are Sufficiently Pled .............................21

    VI.    The Intentional Infliction of Emotional Distress Claim Are Timely and Sufficient .....23

    VII.    Plaintiffs' State Law Civil Conspiracy Claims Survive ..............................................24

    VIII.    Respondeat Superior and Indemnification .....................................................................25

    CONCLUSION ...................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................19

*Armstrong v. Daily*, 786 F.3d 529, 551 (7th Cir. 2015).................................................8

*Ballard v. Watson*, No. 16 C 977, 2016 WL 3364801 (N.D. Ill. June 17, 2016) ...........9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).............................................7, 15

*Blocker v. City of Chicago*, 2017 WL 3278323 (N.D. Ill. Aug. 2, 2017)......................16

*Bowen v. Maynard*, 799 F.2d 593 (10th Cir. 1986)..............................................11, 15

*Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) ......................................................23

*Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016).........................................................9

*Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544 (N.D. Ill. Feb. 2, 2006)..............12

*Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2008) .....................................11, 12, 13

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) ...........................................23

*Denton* v. *Allstate Insurance Co.*, 504 N.E.2d 756, 152 Ill. App. 3d 578 (1986) .........22

*Diaz v. Shallbetter*, 984 F.2d 850 (7th Cir. 1993)......................................................19

*Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) ......................................................18

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) .........................................................8

*Foman v. Davis,* 371 U.S. 178 (1962) .........................................................................14

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ...........................................8

*Gerstein v. Pugh*, 420 U.S. 103 (1975).......................................................................19

*Gonzalez v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009) ..............................................21

*Gonzalez v. City of Waukegan*, 2016 WL 7104284 (N.D. Ill. Dec. 6, 2016)................23

*Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007) .................................................11, 12, 13

*Heck v. Humphrey*, 512 U.S. 477 (1994)............................................................ *passim*

*Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ...................................9

*Hileman v. Maze*, 367 F.3d 694 (7th Cir. 2004) ..........................................................19

*Hobbs v. Cappelluti,* 899 F.Supp.2d 738 (N.D. Ill. 2012) ............................................................24

*Jackson v. City of Peoria*, 2017 WL 1224526 (C.D. Ill. March 31, 2017)...................................16

*James v. Village of Willowbrook*, 2012 WL 3017889 (N.D. Ill. July 19, 2012)..........................21

*Johansen v. Officer Haydysch*, 2015 WL 7568447 (N.D. Ill. Nov. 25, 2015) ............................22

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ................................................................8

*Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013)............................................................................9

*Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993) ..................................................................19

*Kuri v. City of Chicago*, 2017 WL 4882338 (N.D. Ill. Oct. 30, 2017) .........................................16

*Kyles v. Whitley*, 514 U.S. 419 (1995)..................................................................................11, 15

*Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102 (4th Dist. 2011).........................23

*Liu v. T & H Mach.,* 191 F.3d 790 (7th Cir. 1999) .....................................................................14

*Logan v. Caterpillar, Inc*., 246 F.3d 912 (7th Cir. 2001) ............................................................22

*Lovelace v. Gibson*, 2017 WL 5196641 (C.D. Ill. Nov. 9, 2017).................................................16

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) .................................................................. *passim*

*Mulligan v. Village of Bradley*, 131 Ill. App. 3d 513 (3d Dist. 1985)...........................................22

*Neiman v. Vill. of Deerfield*, 2015 WL 9315543 (N.D. Ill. Dec. 22, 2015)..................................22

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)..............................................................15, 16

*Omachonu v. Shields*, No. 15-CV-69-WMC, 2015 WL 4509146 (W.D. Wis. July 24, 2015)......10

*Parish v. City of Chicago*, 594 F.3d 551 (7th Cir. 2010)........................................................15, 16

*Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010) ........................................................19, 23

*Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004) .....................................................12, 23

*Reed v. City of Chi.*, 77 F.3d 1049 (7th Cir. 1996) .....................................................................23

*Rivera v. Lake County*, 974 F. Supp. 2d 1179 (N.D. Ill. Sept. 26, 2013) ...............................21, 24

*Roberts v. City of Chicago*, 817 F.3d 561 (7th Cir. 2016)............................................................7

*Ruiz–Cortez v. City of Chicago,* No. 11 C 1420, 2016 WL 6270768 (N.D. Ill. Oct. 26, 2016) ....13

*Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)..........................................................11, 12, 13

*Smith v. Burge*, 222 F. Supp. 3d 669 (N.D. Ill. 2016) ..................................................11, 12, 13, 14

*Sneed v. Rybicki*, 146 F.3d 478 (7th Cir. 1998) ......................................................................18, 22

*Starks v. Waukegan*, 946 F. Supp. 3d 780 (N.D. Ill. May 21, 2013) ...........................................21

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)................................................................7

*Swick v. Liautaud*, 169 Ill.2d 504 (1996) ....................................................................................21

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)......................................................................10

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)................................................................10

*Thompson v. Village of Monee*, 2013 WL 3337801 (N.D. Ill. July 1, 2013)................................21

*Tillman v. Burge,* 813 F.Supp.2d 946 (N.D. Ill. 2011) ................................................................12

*Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583 (7th Cir. 1989) ...................................7

*United States v. Bland*, 517 F.3d 930 (7th Cir. 2008)..................................................................10

*United States v. Howell*, 231 F.3d 615 (9th Cir. 2000)...........................................................11, 15

*Walker v. White*, 2017 WL 2653078 (N.D. Ill. 2017)........................................................15, 17, 23

*Wallace v. Kato*, 549 U.S. 384 (2007) ........................................................................................19

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ..............................................................8

**Introduction**

This case involves Plaintiffs Jose Montanez and Armando Serrano's civil rights claims against the City of Chicago, Cook County, and Defendant Chicago Police Officers and Assistant State's Attorneys for framing Plaintiffs and falsely pinning a murder on them. Plaintiffs served over two decades in prison for the murder before the charges were dropped and the court granted them each a Certificate of Innocence. Pending before the Court is the City Defendants' motion to dismiss the Complaints (Doc. 55). As detailed below, dismissal is not warranted.

**Factual Allegations**

Plaintiffs Jose Montanez and Armando Serrano were wrongfully convicted of the 1993 shooting death of Rodrigo Vargas based on Defendants' deliberate efforts to frame Plaintiffs. Doc.55.2 at ¶ 1; Doc.55.1 at ¶ 1. This was a classic set-up by the now-notorious Chicago Police Detective Defendant Reynaldo Guevara and his cohorts, Defendants Ernest Halvorsen and Edward Mingey, who have a sordid history of precisely this type of misconduct. Doc.55.2 at ¶ 2. Over two decades, Defendants engaged in a disturbing succession of similar abuses, frequently preying on young Latino men in order to close unsolved cases by framing them. Doc.55.2 at ¶ 2; Doc.55.1 at ¶ 6. In fact, Defendant Guevara has repeatedly invoked the Fifth about his activities as a Chicago police officer in the face of over 100 complaints of his misconduct, asserting his right to silence on grounds that truthful responses would subject him to criminal liability. Doc.55.2 at ¶ 3; Doc.55.1 at ¶ 6.

**The Murder Defendants Falsely Pinned on Plaintiffs**

Early on February 5, 1993, in the Humboldt Park neighborhood of Chicago, Rodrigo Vargas left his home to go to work and was shot to death in his parked van, directly in front of his home. Doc.55.2 at ¶¶ 21-22; Doc.55.1 at ¶ 20. Investigators found his body, along with the

1

van's pull-out radio in his hand and $190 still in his wallet. Doc.55.2 at ¶ 23; Doc.55.1 at ¶ 22. There was no evidence that any property was stolen during the murder. Doc.55.2 at ¶ 23; Doc.55.1 at ¶ 23. There were no motives or leads, and the murder remained unsolved for months until Defendants Guevara and Halvorsen, working under Defendant Mingey's supervision, took over the case. Doc.55.1 at ¶¶ 23, 25, 33; Doc.55.2 at ¶ 18, 25.

Defendants manipulated three witnesses to falsely implicate Plaintiffs: a heroin addict named Francisco Vincente; the decedent's widow, Wilda Vargas; and an unfortunate victim of Defendants' machinations named Timothy Rankins. Doc.55.2 at ¶¶ 37-56, 63-68; Doc.55.1 at ¶¶ 31-37, 41-46; 53-54. As the result of Defendants' foul play, Plaintiffs were falsely indicted and convicted of the shooting death and sentenced to 55 years in prison. Doc.55.2 at ¶ 7; Doc.55.1 at ¶ 62-63.

### Defendants Fabricated Vincente and Wilda Vargas' Testimony

On May 14, 1993, heroin addict Francisco Vincente was arrested and charged with four felonies. Doc.55.2 at ¶ 26; Doc.55.1 at ¶ 26. He had been committing robberies to feed his heroin addiction. *Id.* When he met the Defendant Officers, Vincente was facing up to 100 years in prison on his pending charges, was suffering symptoms of heroin withdrawal and was highly vulnerable to Defendants' manipulation. Doc.55.2 at ¶ 27; Doc.55.1 at ¶ 29. Over the course of a few weeks during the summer of 1993, the Defendant Officers, conspiring with the Defendant Prosecutors, coerced Vincente to "solve" three unrelated murders, going back to him time and time again to fraudulently close more and more cases. Doc.55.2 at ¶ 28.

Defendant Guevara presented Vincente with crime scene photos and photos of Plaintiffs and a supposed accomplice, George Pacheco, telling Vincente that the three committed the murder. Doc.55.2 at ¶ 38; Doc.55.1 at ¶ 41. Defendants Guevara and Halvorsen supplied

2

Vincente with the details of the crime and told him what they wanted him to say in order to inculpate Plaintiffs and Pacheco. *Id.* At this point in the Vargas investigation, there was absolutely no suggestion from any source that Plaintiffs or Pacheco had anything to do with the crime. Doc.55.2 at ¶¶ 34-35, 38. Using physical violence, threats, and bribes, Defendants eventually coerced Vincente to claim that Plaintiffs confessed the crime to him. Doc.55.2 at ¶¶ 41, 53, 60-62, 79; Doc.55.1 at ¶ 43-44. Vincente's fabrication was entirely invented by Defendants. Doc.55.2 at ¶¶ 38, 42.

Lacking a motive, Defendants concocted one for Vincente to supply, involving Plaintiffs supposedly seeing the decedent with a lot of cash at a gas station the night before the murder. Doc.55.2 at ¶ 42; Doc.55.1 at ¶ 32. Defendants knew from the victim's widow, Wilda Vargas, that the decedent was carrying a lot of cash when he purchased gas at a neighborhood station the night before his shooting. Doc.55.2 at ¶ 47; Doc.55.1 at ¶ 31. Defendants, however, hid that fact and instead pretended that they first learned from Vincente that Plaintiffs were at the same gas station as the decedent the night before the murder, and only after Vincente's "revelation" of this (false) fact, learned from Ms. Vargas that the decedent had been at the gas station. Doc.55.2 at ¶¶ 42-47. This gave Vincente's fabrication an air of reliability, because his fictional motive supposedly supplied a confirmable fact previously unknown to law enforcement.

In order to make this ruse work, however, Defendants had to falsify police reports, bury evidence, and manipulate Ms. Vargas into identifying Plaintiff's car as the one she had seen four months earlier, during an insignificant trip to the gas station the night before the murder. Doc.55.2 at ¶¶ 45, 49; Doc.55.1 at ¶ 34-37. To further their fabrication, Defendants Guevara and Halvorsen lied to Ms. Vargas and told her that ballistics evidence taken from Plaintiff Montanez's car forensically matched evidence from the scene of the crime, which was entirely

3

false. Doc.55.2 at ¶ 50; Doc.55.1 at ¶ 34-37. Defendants falsified their police reports to hide this and other lies surrounding Ms. Vargas' supposed corroboration of Vincente's false motive. Doc.55.2 at ¶¶ 45, 50-52.

### Defendants Coerced Evidence from Timothy Rankins

Recognizing that their case against Plaintiffs was flimsy, Defendants sought to devise further false evidence. Doc.55.2 at ¶ 63. On June 10, 1993, a Chicago police officer arrested Timothy Rankins and put him in a car with Defendants Guevara, Halvorsen, and Mingey. Doc.55.2 at ¶ 63; Doc.55.1 at ¶¶ 52-53. Defendants told Rankins that he had to falsely implicate Plaintiffs and Pacheco for Vargas' murder, and when Rankins refused, Defendants Guevara, Halvorsen, and Mingey kicked, beat and threatened him. Doc.55.2 at ¶ 63; Doc.55.1 at ¶¶ 53-54. Resorting to their tried and true method of abuse, as part of this beating Defendants put a phone book against Rankins' head and struck the phone book, causing a very painful concussive effect without leaving physical marks. Doc.55.2 at ¶ 64.

Defendants presented Rankins with a statement, purporting to be his own statement, and commanded him to learn the contents. Doc.55.2 at ¶ 65. During their efforts to force Rankins to adopt the statement as his own, Defendants choked Rankins, beat him, kicked him, and hit him in his genitals. Doc.55.2 at ¶ 65; Doc.55.1 at ¶¶ 53-54. He was assaulted until he agreed to sign the statement. *Id*. Defendants told Rankins that he would be charged with an armed robbery, but that the charges would be dismissed if he cooperated in implicating Plaintiffs and Pacheco. Doc.55.2 at ¶ 66. Rankins' entire implication was false, fabricated by Defendants. Doc.55.2 at ¶ 67; Doc.55.1 at ¶ 53. Defendants forced Rankins to repeat the false accusations against Plaintiffs to the prosecutor and the grand jury. Doc.55.2 at ¶ 67; Doc.55.1 at ¶¶ 55-56. Contrary to his false

inculpation, Rankins did not even know Plaintiffs or Pacheco and had never met them. Doc.55.2 at ¶ 67.

After Rankins' grand jury testimony, Defendants ensured that he was housed along with Vincente in the special witness quarters. Doc.55.2 at ¶ 68. Defendants brought the two "witnesses" money and afforded them special privileges. Doc.55.2 at ¶ 68. Nevertheless, Rankins ultimately refused to falsely implicate Plaintiffs and did not testify at their trial. Doc.55.2 at ¶ 69; Doc.55.1 at ¶ 56.

**Plaintiffs' Convictions**

Defendants arrested Plaintiffs based exclusively on evidence they fabricated. Doc.55.2 at ¶ 70. No inculpatory evidence other than the evidence fabricated by Defendants was relied upon at Plaintiffs' criminal trial. Doc.55.2 at ¶ 73; Doc.55.1 at ¶ 64. Vincente testified at trial against Plaintiffs and then received undisclosed benefits in his own pending criminal charges. Doc.55.2 at ¶¶ 74, 79; Doc.55.1 at ¶¶ 64, 66-67.

The court found Plaintiffs guilty of armed robbery and murder, although the court expressly found the evidence to be slim and acquitted co-Defendant Pacheco on the same evidence. Doc.55.2 at ¶ 76; Doc.55.1 at ¶ 62. But the court ultimately relied on Vincente's supposed insider knowledge of Plaintiffs' (fabricated) presence at the gas station, corroborated by Ms. Vargas (through Defendants' manipulation), as proof that Plaintiffs must have confessed to Vincente. Doc.55.2 at ¶ 76. The court sentenced Plaintiffs to 55 years of incarceration. Doc.55.2 at ¶ 77; Doc.55.1 at ¶ 63. Without the Defendants' misconduct, Plaintiffs would never have been prosecuted for or convicted of Vargas' murder. Doc.55.2 at ¶ 78; Doc.55.1 at ¶ 64.

Plaintiffs' convictions occurred in the context of Defendants' longstanding policy and practice of causing the prosecution of innocent people in violation of due process. Doc.55.2 at

¶¶ 80-91; Doc.55.1 at ¶¶ 73-125. Indeed, the Chicago Police Department is responsible for scores of similar miscarriages of justice. Doc.55.2 at ¶ 80. Since 1986, no fewer than 70 documented cases have come to light in which Chicago Police Detectives amassed "evidence" against an innocent person for a serious crime that he did not commit, and Plaintiffs' Complaints delineate the numerous allegations pertaining to Defendants' abundant misdeeds in this regard. Doc.55.2 at ¶¶ 80, 104.

### Plaintiffs' Exoneration and Civil Suit

In 2016, after more than two decades in prison, Plaintiffs were finally vindicated. On June 7, 2016, the Appellate Court issued a scathing opinion directing the trial court to hear Plaintiff's claims of actual innocence. Doc.55.2 at ¶¶ 8, 108; Doc.55.1 at ¶ 6. The Appellate Court characterized the presented mountain of evidence of Defendant Guevara's misconduct as "profoundly alarming." Doc.55.2 at ¶ 8. Separately, the City conducted its own investigation into Defendant Guevara's misconduct against Plaintiffs and determined that Plaintiffs deserved to be exonerated based on their innocence. Doc.55.2 at ¶ 9; Doc.55.1 at ¶ 8. The State moved to dismiss all charges against Plaintiffs, and they were finally set free on July 20, 2016. Doc.55.2 at ¶ 10; Doc.55.1 at ¶ 7. Without opposition, the state court granted Plaintiffs Certificates of Innocence on November 2, 2016. *Id.*

The civil rights Complaints in this action were filed in April (Serrano) and June (Montanez) 2017. Doc.55.1; Doc. 55.2. The Complaints allege both § 1983 claims and state law claims against Individual, City, and County Defendants.

## Argument

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). At this stage, the court must accept all well-pled facts as true and draw reasonable inferences in Plaintiffs' favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564-65 (7th Cir. 2016). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original). Plaintiffs' claims meet these standards and ably articulate cognizable legal claims.

## I.      Count I - Plaintiffs' Fabrication of Evidence Claims Regarding Timothy Rankins' False and Coerced Statement Are Sufficient

One of the bases for Plaintiffs' fabrication of evidence claims is that, upon recognizing that they needed more evidence than just Vincente's false allegations to secure Plaintiffs' indictments, Defendants Mingey, Guevara, and Halvorsen abused and threatened Timothy Rankins until he adopted a false statement incriminating Plaintiffs. Doc.55.2 at ¶¶ 63-68; Doc.55.1 at ¶¶ 50-56. Defendants' violent coercion led Rankins to falsely implicate Plaintiffs before the grand jury, leading to Plaintiffs' indictment and arrest. *Id.*

Defendants seek dismissal of this claim, arguing that there can be no fabrication of evidence claim relating to Rankins' false inculpation because it was not presented at trial; and that the Complaints fail to allege deprivation of a liberty interest by failing to state how long

7

Plaintiffs were in custody, in order to establish that it was not a *de minimis* deprivation. These arguments are without merit.

First, the State (through Defendant Halvorsen's testimony) introduced Rankins's statement that he was an eyewitness to the murder and implicated Plaintiffs in a handwritten statement. *See* Exhibit A at 90-93 (Halvorsen trial testimony). *See g v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (Plaintiffs may rely upon evidence outside the complaint to establish facts that support their existing claims). Accordingly, Rankins's fabricated statements were in fact introduced at trial, albeit not from Rankins directly. But that is a distinction without a difference. Absent Defendants' fabrication, the juries would not have heard evidence that Rankins supposedly witnessed Plaintiffs commit murder, which happened to also corroborate Vicente's extremely weak testimony. This is classic fabrication of evidence.

Moreover, even if the Rankins statements had not been introduced at trial, the Seventh Circuit resolutely maintains that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty *in some way*." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) (emphasis added) (citing *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988)). To be clear, a plaintiff need not be convicted based on the fabricated evidence in order to state such a claim; rather, causing a person's indictment and pre-trial incarceration can be the source of the deprivation of liberty. *See Armstrong v. Daily*, 786 F.3d 529, 551 (7th Cir. 2015) ("Though the most common liberty deprivation cases are based on post-trial incarceration after a wrongful conviction, the essential elements of this constitutional claim are more general and not limited to wrongful convictions."); *Fields v. Wharrie*, 740 F.3d 1107, 1112 (7th Cir. 2014) ("the fabrication

of evidence harmed the defendant before and not just during the trial, because it was used to help indict him") (citing *Julian v. Hanna*, 732 F.3d 842, 847 (7th Cir. 2013)).

Here, Plaintiffs' Complaints clearly allege that, in coercing the Rankins' false inculpation, Defendants manufactured evidence they knew to be false and that evidence was used to deprive Plaintiffs of their liberty at trial and by contributing to their indictment. While the Complaints do not specify the length of that pre-trial liberty violation, the fact that Plaintiffs were incarcerated as a result of their murder indictment—and did not bond out before trial—is information that Defendants are well aware of and that is readily and publicly available through the Cook County court record system. This Court may take judicial notice of this fact (*see Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)), but even that is unnecessary. A fair inference from the fact that Defendants were indicted for murder is that they were incarcerated as a result. Indeed, it would be unreasonable to assume that they were not. Plaintiffs need only plead sufficient facts that would support their claim, and that they accomplished here.

Thus, this case is readily distinguishable from Defendants' cited authority, *Ballard v. Watson*, No. 16 C 977, 2016 WL 3364801, at *3 (N.D. Ill. June 17, 2016), and *Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016), where the plaintiffs suffered no deprivation of liberty because they were released on bail and then acquitted (*Ballard*) or never tried (*Cairel*). Both the *Ballard* and *Cairel* courts implicitly recognize that had the plaintiffs been held pre-trial, that deprivation of liberty would have been sufficient to support a claim. *Ballard*, 2016 WL 3364801 at *5; *Cairel*, 821 F.3d at 831.

Finally, Defendants argue that because Vincente's trial testimony, without Rankins', was sufficient to support a conviction, Rankins' grand jury testimony was not responsible for Plaintiffs' indictment. But Plaintiffs are not required to prove causation at the motion to dismiss

stage. *See, e.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) ("At the Rule 12(b)(6) stage of the proceedings, however, Ms. Tamayo was required only to allege—not prove—the deprivation of a constitutional right."); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (under Rule 12(b)(6), plaintiffs need not plead facts that prove causation); *Omachonu v. Shields*, No. 15-CV-69-WMC, 2015 WL 4509146, at *7 (W.D. Wis. July 24, 2015) ("At the Rule 12(b)(6) stage, the court cannot speculate as to what other facts bearing on causation might be behind the complaint."). Plaintiffs' fabrication of evidence claim is legally sufficient.[1]

## II. Plaintiffs' *Brady* Claim Against Defendant Mingey Should Not Be Dismissed

Defendants contend Plaintiffs have not stated a *Brady* claim against Defendant Mingey for suppression of evidence related to Rankins' false and violently coerced inculpation of Plaintiffs. They are wrong.[2]

A *Brady* claim has three elements: (1) the suppression of evidence; (2) that was favorable to the defense; and (3) that was material to an issue at trial. *United States v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008) (citation omitted). Suppression of exculpatory evidence relating to Rankins' false inculpation and Defendant Mingey's violent coercion squarely meets all three elements.

Even though Rankins did not testify himself at trial, the State (through Defendant Halvorsen's testimony) introduced evidence that Rankins was an eyewitness to the murder and implicated Plaintiffs in a handwritten statement. *See* Exhibit A at 90-93 (Halvorsen trial

---

[1] Plaintiffs' fabrication of evidence claims also allege that the Individual Defendants fabricated false, inculpatory evidence from Wilda Vargas and Vincente. Defendants' motion does not contest those claims, implicitly conceding their viability.

[2] Defendants limit this motion to evidence pertaining to Defendant Mingey's manipulation and abuse of Rankins. Thus, Defendants again implicitly concede the sufficiency of Plaintiffs' other *Brady* claims as they similarly relate to suppression of evidence of: the other Defendants' abuse of Rankins; the Individual Defendants' abuse and manipulation of Vincente and manipulation of Wilda Vargas; and Defendants' systemic abuses.

testimony). Accordingly, Rankins's coerced false statements are classic *Brady* evidence. They were introduced at trial, used to implicate Plaintiffs and corroborate Vicente's extremely weak testimony, but the fact that the statements were both coerced and false was withheld. Plaintiffs, therefore, were unable to effectively impeach the otherwise unrebutted testimony that Rankins saw the murder and implicated Plaintiffs, unquestionably powerful evidence given the closely balanced nature of the evidence at trial.

Moreover, regardless whether the State affirmatively used Rankins's testimony at trial, evidence supporting the conclusion that Defendant Mingey violently induced an inculpation of Plaintiffs—such as the instruments of that brutality and any reports documenting the evolution of Rankins' false testimony—certainly would have impugned the prosecution's extremely shaky case, impeached Defendants' credibility, and rendered the entire investigation suspect. *See Kyles v. Whitley*, 514 U.S. 419, 445 (1995) (information which might have raised opportunities for the defense to attack "the thoroughness and even the good faith of the investigation" constitutes exculpatory, material evidence); *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant and we may consider such evidence in assessing a possible *Brady* violation."); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000). Moreover, evidence that Defendant Mingey suppressed the implements of Defendants' abuse, buried evidence of systemic abuse, and obstructed investigations into the systemic abuses can further support a *Brady* claim. *See Smith v. Burge*, 222 F. Supp. 3d 669 (N.D. Ill. 2016).

### A. Plaintiffs' Complaints States a *Brady* Claim Against Defendant Mingey, Distinct from the Fabrication of Evidence Claims

Defendants cite *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008), *Harris v. Kuba*, 486 F.3d 1010, 1016-17 (7th Cir. 2007), and *Saunders-El v. Rohde*, 778 F.3d 556, 562

11

(7th Cir. 2015), to argue that the fact that Defendant Mingey lied about Rankins' false inculpation is, alone, insufficient to support a *Brady* against claim him. *See Saunders-El*, 778 F.3d at 562 (rejecting a *Brady* claim based on officers' failure to disclose their fabrication of evidence); *Carvajal*, 542 F.3d at 567-68 (rejecting a *Brady* claim based on the defendant officers' knowledge of their lies); *Harris*, 486 F.3d at 1017 (rejecting a *Brady* claim based on officer's knowledge of his false statement to the prosecutor). But Plaintiffs' allegations include more than just Defendant Mingey's knowledge of his own lies, and a potential *Brady* claim is therefore sufficiently pled.

In *Smith v. Burge*, the court considered allegations similar to Plaintiffs' here and explained that claims of defendants suppressing the implements of their abuse, burying evidence of systemic abuse, and obstructing investigations into the abuses can support a *Brady* claim:

> Plaintiff bases his *Brady* violation on more than just Defendant Officers' failure to disclose their unlawful interrogation tactics in relation to his coerced confession. Specifically, Plaintiff alleges that Defendant Officers suppressed the implements of their torture, including the plastic bag, the rubber nightstick, and Plaintiff's bloody clothes. [citation]. More importantly, Plaintiff alleges that Defendants suppressed and destroyed evidence of systemic torture and abuse in Area 2, obstructed investigations into the CPD's systemic torture, and discredited findings of systemic torture. [citation].

> With the Seventh Circuit's *Gauger* and/or *Sornberger* decisions in mind, courts in this district have concluded that similar allegations state a *Brady* claim based on events that transpired outside of the interrogation room. *See Tillman v. Burge,* 813 F.Supp.2d 946, 962 (N.D. Ill. 2011) (allegations of "'suppressing, destroying, and preventing the discovery' of exculpatory evidence, including that of 'the instruments of torture,'" and "obstructing and improperly influencing investigations" are "circumstances that substantially exceed what Tillman was aware of based on his presence at the interrogation"); *Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *12 (N.D. Ill. Feb. 2, 2006) ("Plaintiff's knowledge of what transpired in the interrogation room does not relieve the City Defendants of their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room, or preclude the Court from finding the existence of a *Brady* violation."); *Patterson v. Burge,* 328 F.Supp.2d 878, 889 (N.D. Ill. 2004) ("in addition to charging defendants with hiding the fact that his confession was coerced and fabricated—an allegation which by itself might not state a *Brady* claim after *Gauger*—Patterson accuses defendants of obstructing justice and violating his right to a fair trial through actions they took outside the interrogation

> room."); *see also Ruiz–Cortez v. City of Chicago,* No. 11 C 1420, 2016 WL 6270768, at
> *16 (N.D. Ill. Oct. 26, 2016) (Plaintiff's claims "relate to things that ranged far outside
> Plaintiff's knowledge," including a "pattern of misconduct and obstruction of justice.").
> The decision in *Saunders-El* does not change this reasoning as it relates to Plaintiff's
> allegations of Defendants suppressing the implements of their torture, destroying
> evidence of systemic torture and abuse in Area 2, obstructing investigations into the
> CPD's systemic torture, and discrediting findings of systemic torture. In sum, at this stage
> of the proceedings, Plaintiff's allegations are distinguishable from the facts in *Saunders–
> El* because Plaintiff is not merely basing his *Brady* claim on Defendants "keeping quiet
> about their wrongdoing." *Saunders-El*, 778 F.3d at 562.

*Smith*, 222 F. Supp. 3d at 680-81.

Here, the allegations against Defendant Mingey are substantially the same as the

sufficient allegations in *Smith* and the cases cited therein and thus distinguishable from

*Saunders-El*, *Carvajal*, and *Harris*. Like Smith, Plaintiffs allege that Defendant Mingey

destroyed evidence of systemic abuse, obstructed investigations into the Chicago Police

Department's systemic abuses, and discredited findings of systemic abuse. *See, e.g.,* Doc.55.2 at

¶ 82 (describing practice of officers "systematically suppress[ing] exculpatory and/or impeaching

material by concealing evidence that a jailhouse witness was coerced, manipulated, threatened,

pressured or offered inducements to make false statements."); *Id.* at ¶ 83 (describing Defendants'

practice of "procuring false testimony from detainee witnesses"  and concealing the "tactics and

inducements used to gain cooperation from these jailhouse witnesses" from Plaintiff); *Id.* at 84-

86 (describing Defendants' destruction of evidence of comparable systemic abuses). As but one

example, a fair inference from the facts pled is that Defendant Mingey suppressed the instrument

of his violence, the bloody phonebook with which he beat Rankins. As in *Smith*, these allegations

are sufficient to state a *Brady* claim. *See id.,* 222 F. Supp. 3d at 680-81.

In the alternative, should the Court desire additional factual pleadings, Plaintiff Serrano

could amend his Complaint to add the above-cited allegations from Plaintiff Montanez's

Complaint, and both Plaintiffs could add the allegation that Defendant Mingey suppressed the

bloody phone book. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend a complaint] when justice so requires"); *Liu v. T & H Mach.,* 191 F.3d 790, 794 (7th Cir. 1999) (courts may deny leave to amend if there is an apparent reason for doing so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of amendment.") (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Plaintiffs have not yet amended their Complaints, it is early in the case, and allowing these additional factual allegations would not change the liability theories or prejudice Defendants in any way. Accordingly, leave to amend is warranted (if deemed necessary). *Id.*

### B.  Plaintiffs Have Sufficiently Alleged Suppression and Materiality

Defendants argue that Rankins' fabricated statement "was not 'material' evidence 'suppressed' from Plaintiffs during their criminal trials because Rankins recanted his statement and refused to testify against Plaintiffs at their criminal trials." (Doc.55 at 18). They reach this conclusion, however, by considering the wrong evidence in support of the *Brady* claims.

In other words, Defendants argue that because Plaintiffs were aware of the fact that Rankins recanted, nothing could have been suppressed. But the *Brady* violation is, of course, not merely based on suppression of the fact that Rankins recanted. Rather, the violation can rely on suppression of evidence such as: the instrument of Defendants' abuse to induce the false confession, any reports or other documentation of the inducement of Rankins' fabrication, the fact that Rankins's statements were false, the manner in which his statements were coerced, the evidence of similar systemic abuses, and evidence of Defendants' efforts to thwart investigation of their abuses. *See Smith*, 222 F. Supp. 3d at 680-81, and the cases cited therein. Importantly, Plaintiffs are not required at this, the pleading stage, to detail all of the evidence that was

14

withheld from them in order to satisfy Rule 8. At the pleading stage, all that is required is a plausible, non-conclusory short and plain statement of the claim showing that Plaintiffs are entitled to relief. *Bell Atlantic Corp.*, 550 U.S. at 554-55. Plaintiffs have more than met this requirement.

Finally, Defendants argue that because Rankins never testified at trial, their suppression related to coercing him could not be material. This is preposterous. As explained above, statements attributed to Rankins via Halverson's trial testimony were introduced, and thus Defendants' argument rests on a false premise. The violent manner in which Rankins's false statements were obtained was suppressed and hidden; this was certainly material. Moreover, evidence that Defendants beat and threatened Rankins in order to force him to falsely implicate Plaintiffs certainly would have impeached Defendants' credibility and impugned their entire investigation, regardless of whether Rankins ultimately testified at trial. *See Kyles*, 514 U.S. at 445; *Bowen*, 799 F.2d at 613; *Howell*, 231 F.3d at 625. Defendant Mingey's limited opposition to Plaintiffs' *Brady* claims fails.

## III. Plaintiffs Sufficiently Plead Their Malicious Prosecution Claim

Defendants' arguments in opposition to Plaintiffs' federal malicious prosecution claims are twofold. First, Defendants cursorily assert that even post- *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), there is no federal malicious prosecution claim in the Seventh Circuit, relying on *Walker v. White*, 2017 WL 2653078, at *5 (N.D. Ill. June 20, 2017), *Parish v. City of Chicago*, 594 F.3d 551 (7th Cir. 2010), and *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). Second, Defendants contend that even if these claims exist, they are time barred here. Defendants are wrong on both accounts.

15

### A.    Federal Malicious Prosecution Claims Are Viable

Previously, the Seventh Circuit maintained that a federal malicious prosecution action could not be brought if the plaintiff had an adequate state remedy. *See, e.g., Newsome*, 256 F.3d at 750-51; *Parish*, 594 F.3d 551. In *Manuel v. City of Joliet*, 590 F. App'x 641 (7th Cir. 2015), the Seventh Circuit relied on *Newsome* and *Parish* to hold that federal malicious prosecution claims are founded on the right to due process, not the Fourth Amendment, and the plaintiff could not bring a federal malicious prosecution claim because the state provided a similar remedy. *Manuel*, 590 F. App'x at 642-43. The United States Supreme Court, however, reversed this ruling and expressly abrogated *Newsome*. *Manuel*, 137 S. Ct. at 918-19. Specifically, the Court held that pretrial detention can violate the Fourth Amendment when the detention precedes or follows the start of legal process in a criminal case.

Although the *Manuel* decision did not definitively decide whether a claim for malicious prosecution may be brought under the Fourth Amendment, numerous district courts have since held that, in light of *Manuel*, a plaintiff in the Seventh Circuit can bring a Fourth Amendment malicious prosecution claim "if the plaintiff alleges that the defendant caused a prolonged seizure of the plaintiff pursuant to legal process unsupported by probable cause and the criminal proceedings terminated in the plaintiff's favor." *Lovelace v. Gibson*, 2017 WL 5196641, at *6 (C.D. Ill. Nov. 9, 2017) (allowing plaintiff's federal malicious prosecution claims, in light of *Manuel*) (citing *Jackson v. City of Peoria*, 2017 WL 1224526, at *9 (C.D. Ill. March 31, 2017), *appeal filed*; *Kuri v. City of Chicago*, 2017 WL 4882338, at *7 (N.D. Ill. Oct. 30, 2017)). *See also Blocker v. City of Chicago*, 2017 WL 3278323, at *4 (N.D. Ill. Aug. 2, 2017) (Shah, J.) ("prolonged pretrial detention without probable cause (including a judicial finding of probable

cause based solely on false evidence supplied by police officers), violates the Fourth Amendment").

Defendants' reliance on the Court's lone contrary ruling in *Walker* is surprising, because *Walker* actually supports Plaintiffs' position. There, this Court recognized that the plaintiff had pled under the pre-*Manuel* regime and granted plaintiff leave to re-plead his claim under the Fourth Amendment, to reconcile it with *Manuel*. 2017 WL 2653078, at *5 ("When the parties briefed the motions to dismiss, the appeal from *Manuel* to the Supreme Court was still pending…. his claim under malicious prosecution… is not entirely consistent with *Manuel*. Therefore his federal malicious prosecution claim is dismissed, but he has leave to replead a Fourth Amendment claim consistent with *Manuel*.").

### B. Plaintiffs' Malicious Prosecution Claims are Timely

 Defendants' suggestion that Plaintiffs' claims are decades too late ignores that the delay in filing was unambiguously mandated by *Heck v. Humphrey*, 512 U.S. 477 (1994), the controlling authority on this issue. Defendants fail to mention, much less discuss, *Heck*. Because *Heck* governs, Defendants' arguments contesting the claims' timeliness are without merit.

*Heck* provides the analytical framework for determining when a § 1983 claim accrues. *Heck* itself considered a § 1983 claim brought by a prisoner who alleged his conviction was unconstitutional because of official misconduct before and during his criminal trial and because of the use of illegally obtained evidence at his trial. *Id.* at 478-79. The Supreme Court held that the prisoner's damages suit was barred, stating that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed . . . , expunged . . . , declared invalid . . . , or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that

17

has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (emphasis in original).

*Heck* thus establishes a deferred accrual rule for pleading a § 1983 claim dependent on favorable termination of the criminal proceedings, concluding that it does not accrue until the conviction or sentence has been invalidated. *Id.* at 489-90. This ensures that any damages claim attacking the conviction's constitutionality waits until the conviction has been set aside, for fear of rendering a verdict in a federal damages action that would conflict with a state criminal conviction. *Id. See also Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) ("For malicious prosecution, all the elements cannot be pled until the proceedings are terminated in the plaintiff's favor. Thus the cause of action does not accrue until the criminal proceedings are over.").

Here, there can be no legitimate dispute that Plaintiffs were barred by *Heck* from bringing federal malicious prosecution claims until their convictions were vacated. The malicious prosecution claim requires as an element that "criminal proceedings terminated in [plaintiffs'] favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *see also Manuel*, 137 S. Ct. at 921 & nn. 4 & 9 (noting that the Fourth Circuit and the vast majority of courts of appeals "that have recognized a Fourth Amendment claim like this have incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case"); *Kuri*, 2017 WL 4882338, at *7 (to bring a claim of malicious prosecution under the Fourth Amendment per *Manuel*, plaintiffs must allege that criminal proceedings terminated in plaintiff's favor); *Sneed*, 146 F.3d at 481. The charges against Plaintiffs' were dropped in July 2016, the certificates of innocence were granted in November 2016, and the complaints were filed in April (Serrano) and June (Montanez) of 2017. Doc.55.2 at ¶ 10. The claims were filed well within the two year statute of limitations.

18

Defendants rely on *Wallace v. Kato*, 549 U.S. 384 (2007), to suggest that the filing clock began running when Plaintiffs were arrested, but to get there Defendants improperly equate the right identified in *Manuel* (and, previously, by *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) and *Albright v. Oliver*, 510 U.S. 266, 274 (1994)) with a false arrest claim. *See* Doc. 55 at 14 ("Plaintiffs' Fourth Amendment claims are based on their allegedly improper arrests that led to their pre-trial detention"). The two are not the same. A false arrest claim focuses on seizure without legal process. *See Wallace*, 549 U.S. at 389 ("the allegations before us arise from respondents' detention of petitioner *without legal process* in January 1994") (emphasis in original). Conversely, a claim for malicious prosecution under *Manuel* attacks the deprivation of liberty "after legal process commences." *Manuel*, 137 S. Ct. at 918. Because Plaintiffs are challenging the fairness of the legal process itself, their claim is governed by the *Heck* rule for "claims that do call into question the lawfulness of conviction or confinement." *Heck*, 512 U.S. at 483.

In addition, *Heck*, not *Wallace*, governs here because of the favorable termination requirement. *See Parish v. City of Elkhart*, 614 F.3d 677, 682 (7th Cir. 2010) (explaining the distinction between *Heck* and *Wallace:* "the tort of false arrest [(*Wallace*)] is complete, and therefore begins to accrue, once the individual is brought before a magistrate; the tort of malicious prosecution [(*Heck*)] is not complete until a conviction occurs and that conviction has been overturned, and therefore the statute of limitations for malicious prosecution does not begin to accrue until that time.") (citation omitted). Defendants' remaining cited authority—*Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993) (liquor license revocation), *Diaz v. Shallbetter*, 984 F.2d 850 (7th Cir. 1993) (shooting victim), and *Hileman v. Maze*, 367 F.3d 694 (7th Cir. 2004)

(election fraud)—lack a favorable termination requirement and therefore do not implicate *Heck*, much less abrogate, the clear mandates of the *Heck* rule. Plaintiffs' claims are timely.

**IV.    The Conspiracy and Failure to Intervene Claims Against Mingey Are Sufficient**

Defendants argue that because Plaintiffs cannot (according to them) plead any constitutional violation against Defendant Mingey, he cannot be liable for a conspiracy claim or failure to intervene claim because both require an underlying constitutional violation. However, as detailed above, Defendants' attacks on Plaintiffs' Complaints fail. Furthermore, even if Defendants were to prevail on all of the arguments raised herein, there are still numerous surviving constitutional violations that Defendants' motion concedes that could support the conspiracy and failure to intervene claims against Defendant Mingey. *See supra* at 9 n.1 and 10 n.2. For instance, the Complaints allege fabrication of evidence claims, not just based on Defendants' fabrication of the Rankins' inculpation, but also based on Defendants' creation of fictional evidence deriving from Vincente and Wilda Vargas. *See, e.g.,* Doc.55.2 at ¶¶ 4-6, 27-31 and Doc.55.1 at ¶¶ 42-44 (regarding the Vincente fabrication); Doc.55.2 at ¶ 115 and Doc.55.1 at ¶¶ 32-37, 44-45 (alleging that Defendants falsified police reports and failed to correct fabricated reports regarding Vincente and Wilda Vargas evidence). Additionally, the Complaints allege *Brady* claims well beyond the lone aspect of the claim contested here. *See supra* at 10-13. Finally, the Complaints specify that Defendant Mingey played a unique role in the conspiracy aiding, facilitating, and failing to intervene during the constitutional violations of the others. Doc.55.2 at ¶¶ 18, 141.

Plaintiffs have set forth factual allegations from which a jury could infer that Defendants worked together in securing Plaintiffs' arrest and prosecution and agreeing to frame them. *See,*

*e.g.*, Doc.55.2 at ¶¶ 4-6, 18, 27-31, 115,135; Doc.55.1 at ¶¶ 31-61. Defendants' limited contest of some of those claims does not categorically refute Plaintiffs' allegations that Defendant Mingey participated in Defendants' conspiracy and failed to intervene during the other participants' constitutional violations. *See Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. Sept. 26, 2013) (conspiracy properly pled when Plaintiff alleged Defendants "took further steps to implicate Plaintiff in the crime because they were determined to conceal their wrongdoing."); *Thompson v. Village of Monee*, 2013 WL 3337801, at *8 (N.D. Ill. July 1, 2013) (St. Eve, J.) (denying motion to dismiss conspiracy claim because the plaintiffs alleged a pattern of harassment, which, along with their allegations of an agreement and scheme, were sufficient to state a claim); *s v. Waukegan*, 946 F. Supp. 3d 780, 789 (N.D. Ill. May 21, 2013) (plaintiff's complaint as a whole plausibly suggested that the defendants "really did agree to act together" to violate the plaintiff's constitutional rights); *James v. Village of Willowbrook*, 2012 WL 3017889, at *9 (N.D. Ill. July 19, 2012) (Holderman, J.) (denying motion to dismiss conspiracy claim where the plaintiff alleged repeated instances of misconduct and facts suggesting an opportunity for the defendants to conspire to deprive the plaintiff of his rights).

## V.     Plaintiff's State Law Malicious Prosecution Are Sufficiently Pled

To state a malicious prosecution claim under Illinois law, a plaintiff must allege that the defendant commenced or continued a criminal proceeding against him, the criminal proceeding terminated in favor of the plaintiff, there was no probable cause for the proceeding, the defendant acted with malice, and the plaintiff was damaged as a result of the proceeding. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009) (citing *Swick v. Liautaud*, 169 Ill.2d 504 (1996)). In their motion, Defendants contest whether Plaintiffs have properly alleged that Defendants commenced and continued the proceedings against Plaintiffs because the Complaint does not allege that Defendants personally filed the indictment. The law does not require this.

Instead, "a plaintiff may show that the defendant continued the proceeding by actively encouraging the prosecution despite knowing that no probable cause existed." *Johansen v. Officer Haydysch*, 2015 WL 7568447, at *2 (N.D. Ill. Nov. 25, 2015) (citing *Denton* v. *Allstate Insurance Co.*, 504 N.E.2d 756, 760, 152 Ill. App. 3d 578 (1986). Plaintiffs squarely make such allegations. *See, e.g.,* Doc.55.2 at ¶¶ 6, 33, 37, 56, 114-15.

Moreover, Defendants' only authority supports the sufficiency of the Complaints. In *Sneed*, the court delineates the sorts of allegations that support commencing and continuing the proceedings against the plaintiff, including or "falsif[ying] any information or evidence" and "with[olding] exculpatory evidence." 146 F.3d at 481 (citations omitted). Likewise, *Logan v. Caterpillar, Inc*., 246 F.3d 912, 922 (7th Cir. 2001), recognizes that a person can be liable for commencing the criminal proceeding by being an active participant and offering advice and cooperation. *See also Neiman v. Vill. of Deerfield*, 2015 WL 9315543, at *2 (N.D. Ill. Dec. 22, 2015) (allegations that defendant knowingly provided false information to investigator sufficiently alleged defendant's commencement of proceedings). Again, these are precisely the sort of allegations Plaintiffs have made. *See, e.g.,* Doc.55.2 at ¶¶ 6, 33, 44-45, 51-52, 63-67; 80-83; Doc.55.1 at ¶¶ 31-61.[3]

Defendants also argue that the prosecution's participation in the conspiracy breaks the causation chain for the Defendant officers' participation in the malicious prosecution. For pleading purposes, when considering causation, the court should dismiss the malicious prosecution claim "only if it is clear from the pleadings that [plaintiff's] prosecution would have

---

[3] Defendants' citation to *Mulligan v. Village of Bradley*, 131 Ill. App. 3d 513, 516 (3d Dist. 1985), has no application here. *Mulligan* held that where a party suffers a grand jury inquiry that does not result in charges, he does not have a viable malicious prosecution claim. In contrast, Plaintiffs allege that Defendants ensured the grand jury heard only fabricated evidence, which resulted in murder charges issuing. This adequately supports the "commencement" requirement.

continued without [defendants'] involvement." *Patterson v. Burge*, 328 F. Supp. 2d 878, 900 (N.D. Ill. 2004). As Defendants acknowledge (Doc.55 at 17), an indictment does not break the causal chain between the officers' misconduct and the malicious prosecution when there is "an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor." *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017) (quoting *Reed v. City of Chi.*, 77 F.3d 1049, 1053 (7th Cir. 1996)).

Here, the Complaints allege far more than just mild influence—Plaintiffs contend that the Defendant officers conspired with the prosecutors to falsify evidence, withhold exculpatory evidence, influence witnesses, and ensure that Plaintiffs were wrongfully prosecuted. *See, e.g.,* Doc.55.2 at ¶¶ 6, 33, 37, 56, 114-15; Doc.55.1 at ¶¶ 31-61. These allegations are sufficient to plead Defendants' commenced or continued criminal proceedings against Plaintiffs.

## VI. The Intentional Infliction of Emotional Distress Claim Are Timely and Sufficient

Relying on *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013), Defendants argue that Plaintiffs' IIED claims are untimely because, they say, the claims accrued at the time of Plaintiffs' trial and are not a continuing violation under Seventh Circuit law. Doc.55 at 19. This Court considered and rejected the same arguments in *Walker v. White*, 2017 WL 2653078, *6 (N.D. Ill. 2017) (Shah, J.).

Under Illinois law, the *Heck* doctrine operates to bar any state law tort claim the success of which would be inconsistent with the validity of an existing conviction. *See Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1112 (4th Dist. 2011) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). For this reason, Plaintiffs' one-year statute of limitations did not begin to run until their convictions were overturned. *Walker*, 2017 WL 2653078, at *6; *see also Gonzalez v. City of Waukegan*, 2016 WL 7104284, at *8-9 (N.D. Ill. Dec. 6, 2016); *Parish*

23

*v. City of Elkhart*, 614 F.3d 677, 683-84 (7th Cir. 2010) (under *Heck*, the plaintiff could not have brought his IIED claim (based on fabrication of evidence and a wrongful conviction) until he had favorable termination, i.e., was exonerated); *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1188-89 (N.D. Ill. 2013) ("Courts hold consistently "that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated."); *Hobbs v. Cappelluti,* 899 F.Supp.2d 738, 762-63 (N.D. Ill. 2012) (collecting district court cases and stating, "courts have held that when a plaintiff's IIED claim incorporates the conduct underlying his malicious prosecution claim, the claim does not accrue until the criminal proceedings against him are terminated"). Plaintiffs' IIED claims did not accrue until their convictions were vacated.

Defendants also argue that Plaintiffs' IIED claims fail as to Defendant Mingey because the only claims against him are based on his abuse of Rankins, which is not tied to the validity of Plaintiffs' convictions, since Rankins did not testify. This, however, is wishful thinking on Defendants' part. The allegations against Defendant Mingey are far broader than just his abuse of Rankins. The Complaints allege that Defendants Guevara and Halvorsen, working under Defendant Mingey's direct supervision and with his collaboration, manipulated three witnesses to falsely implicate Plaintiffs: Francisco Vincente, Wilda Vargas, and Timothy Rankins. Doc.55.1 at ¶ 25; Doc.55.2 at ¶ 18, 25. They also allege the doctoring of police reports and the suppression of evidence. These claims could not be raised until after Plaintiffs' exoneration.

## VII.  Plaintiffs' State Law Civil Conspiracy Claims Survive

Because Plaintiffs' state law malicious prosecution and IIED claims remain cogent, their corresponding state law conspiracy claims should not be dismissed.

24

**VIII.** *Respondeat Superior* **and Indemnification**

Defendants argue that Plaintiffs' derivative *respondeat superior* and indemnification claims should be dismissed because the underlying claims should be dismissed. Doc. 55 at 21. For all the reasons stated above, the underlying claims should not be dismissed, and Defendants' motions to dismiss Plaintiffs' *respondeat superior* and indemnification claims should be denied.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Respectfully submitted,

/s/ Russell Ainsworth                                    /s/ Jennifer Bonjean
Counsel for Jose Montanez                          Counsel for Armando Serrano

Russell Ainsworth                                         Jennifer Bonjean
Debra Loevy                                                 Bonjean Law Group, PLLC
LOEVY & LOEVY                                          1000 Dean St., Ste. 422
311 North Aberdeen Street                           Brooklyn, New York  11238
Third Floor                                                    Phone: (718) 875-1850
Chicago, Illinois 60607
Phone: (312) 243-5900

25

## <u>CERTIFICATE OF SERVICE</u>

       I, Russell Ainsworth, an attorney, certify that on December 18, 2017, I served the foregoing Response to all counsel of record via CM/ECF filing system.

/s/ Russell Ainsworth        